# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 29, 2011 Session

## STATE OF TENNESSEE v. JAMES RYAN WATSON

**Appeal from the Criminal Court for Polk County**
**No. 09-085    Carroll L. Ross, Judge**

---

**No.  E2010-00884-CCA-R3-CD - Filed June 8, 2011**

---

Appellant, Ryan Watson,[1] was indicted in June of 2009 by the Polk County Grand Jury for driving under the influence ("DUI") of an intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system, or in the alternative, driving while the alcohol concentration in the defendant's blood or breath was .08% or more.  Prior to trial, Appellant filed a motion to suppress the following: (1) the search of his person and vehicle; (2) his statement at the time of the arrest; (3) the results of the blood alcohol test; and (4) the results of the field sobriety tests.  After a hearing, the trial court denied the motions.[2]  Subsequently, Petitioner pled guilty to DUI, first offense and was sentenced to eleven months and twenty-nine days  incarceration in the county jail.  The trial court suspended the sentence, after service of forty-eight hours, and ordered Appellant to serve the sentence on probation.  As a condition of the guilty plea, Appellant reserved a certified question of law pursuant to Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure arguing that the trial court erred in denying the motion to suppress.  After a thorough review of the record, we conclude that the evidence does not preponderate against the factual findings of the trial court that there was probable cause for the stop of Appellant's vehicle.  Therefore, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and J.C. MCLIN, JJ., joined.

G. Scott Kanavos, Cleveland, Tennessee, for the appellant, James Ryan Watson.

---

[1] Some of the pleadings refer to Appellant as James Ryan Watson.  The indictments, however, refer to Appellant as Ryan Watson.

[2] Although it is clear from the record that the trial court denied the motions, the record does not contain an order in which the motions were denied.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Jerry N. Estes, District Attorney General, and Brooklynn Townsend, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

On the evening of July 22, 2009, Officer Glen Stiles of the Polk County Sheriff's Department observed Appellant driving a vehicle on a two-lane section of Highway 68 South in Polk County. The road was described by the officer as "curvy." After Appellant entered the roadway from the "Runway Bar," Officer Stiles followed Appellant for about one-half of a mile. Officer Stiles testified that during that one-half of a mile, Appellant crossed the fog line, returned to his own lane of traffic, crossed the fog line a second time, then "corrected" by driving across his own lane and crossing the yellow line into the oncoming lane of traffic. There were no other vehicles on the road at the time. At that time, Officer Stiles initiated a traffic stop. Officer Stiles testified that there was no videotape of the events leading up to the stop. Appellant did not testify at the hearing. Counsel for Appellant argued that Tennessee law does not require that a citizen driver follow a perfect "vector" down the highway in order to be free from a traffic stop and subsequent search and seizure. In other words in counsel's view, Officer Stiles did not have probable cause to stop Appellant.

At the conclusion of the hearing, the trial court determined that the "stop, subsequent search, and arrest" were valid, and denied the motion to suppress.

Appellant then entered a guilty plea and reserved a certified question of law for appeal pursuant to Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure. At the guilty plea submission hearing, the State summarized the facts as follows:

> On the date alleged in the indictment, Officer Glen Stiles with the Polk County Sheriff's office observed a vehicle traveling on Highway 68 South in Copperhill. He observed the vehicle cross the white line two times and the yellow line one time in less than half-a-mile. When he made contact with the subject, there was a very strong odor of an alcoholic beverage about him. He asked the defendant if he'd been drinking, and he said, "About four or five beers." He was asked to perform the field sobriety tests. He failed all three tests that he performed, the HGN, one-leg stand, and walk and turn. He was arrested and transported to Ducktown where he was offered a breathalyzer, with the results being a .15.

The trial court accepted the guilty plea to one count of DUI. The trial court sentenced Appellant to eleven months and twenty-nine days, and ordered Appellant to spend the sentence on probation after service of forty-eight hours of incarceration.

In conjunction with the entry of the guilty plea, Appellant properly preserved a certified question of law pursuant to Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure[3] for appeal to this Court. Appellant's certified question of law on appeal is the following:

> [W]hether based upon the testimony of the officer, the State of Tennessee demonstrated that either a reasonable suspicion or probable cause existed that a crime was being committed by the defendant sufficient to justify the stop, search, and seizure of the defendant within his rights as protected by Article I Section 7 of the Tennessee Constitution and amendments IV and XIV of the Constitution of the United States.

---

[3] In pertinent part, Rule 37(b) of the Tennessee Rules of Criminal Procedure provides:

The defendant or the state may appeal any order or judgment in a criminal proceeding when the law provides for such appeal. The defendant may appeal from any judgment of conviction:

(1) on a plea of not guilty; or

(2) on a plea of guilty or nolo contendere, if:

(A) the defendant entered into a plea agreement under Rule 11(a)(3) but explicitly reserved - with the consent of the state and of the court - the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:

(i) the judgment of conviction or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law that the defendant reserved for appellate review;

(ii) the question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;

(iii) the judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

(iv) the judgment or document reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case; . . . .

*Analysis*

On appeal, Appellant argues that the trial court improperly denied the motion to suppress. Specifically, Appellant contends that the holdings and factual scenarios presented in the cases of *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000); *State v. Binette*, 33 S.W.3d 215 (Tenn. 2000); *State v. Smith*, 21 S.W.3d 251 (Tenn. Crim. App. 1999); *State v. Ann Elizabeth Martin*, No. E1999-01361-CCA-R3-CD, 2000 WL 1273889 (Tenn. Crim. App., at Knoxville, Sept. 8, 2000); *State v. John Crawley, Sr.*, No. M2003-01289-CCA-R3-CD, 2004 WL 112867 (Tenn. Crim. App., at Nashville, Jan. 23, 2004), *perm. app. denied* (Tenn. June 23, 2004); and *State v. Frank Edward Davidson*, No. E2007-02841-CCA-R3-CD, 2008 WL 8429683 (Tenn. Crim. App., at Knoxville, Sept. 10, 2008), demonstrate that a driver is not required to drive perfectly on the highways in order to avoid being stopped by police and subjected to a seizure. Applying the rationale in those cases to the facts herein, Appellant claims that "none of his driving conduct was such to warrant an impermissible stop by Deputy Stiles." The State, on the other hand, argues that Officer Stiles "had reasonable suspicion based on specific and articulable facts - personal observation of [Appellant's] crossing the fog line twice and crossing into the opposing lane of traffic in a two-lane highway - to initiate an investigatory stop." Further, the State points out that Officer Stiles had "probable cause to conduct a stop of [Appellant's] vehicle based on a traffic violation." In other words, the State insists that the trial court properly denied the motion to suppress.

Our analysis begins with the standard of review. In analyzing a trial court's decision on a motion to suppress, an appellate court is to conduct a de novo review regarding the trial judge's application of the law to the evidence presented. *State v. Bridges*, 963 S.W.2d 487, 490 (Tenn. 1997); *State v. Yeargan*, 958 S.W.2d 626, 628-29 (Tenn. 1997). Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id.* at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews de novo the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999). When the trial court's findings of fact are based entirely on evidence that does not involve issues of witness credibility, however, appellate courts are as capable as trial courts of reviewing the evidence and drawing conclusions, and the trial court's findings of fact are subject to de novo review. *Binette*, 33 S.W.3d at 217.

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures by government agents. *See* U.S. Const. amend. IV; Tenn. Const. art. I, § 7. "These constitutional provisions are designed to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" *Keith*, 978 S.W.2d at 865 (quoting *Camara v. Mun. Ct.*, 387 U.S. 523, 528 (1967)). The Tennessee Supreme Court has noted previously that "[a]rticle I, [section] 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment [of the United States Constitution]," and that federal cases applying the Fourth Amendment should be regarded as "particularly persuasive." *Sneed v. State*, 423 S.W.2d 857, 860 (Tenn. 1968).

Under both constitutions, "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *Yeargan*, 958 S.W.2d at 629 (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971)); *see also State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003).

One of these narrow exceptions occurs when a law enforcement officer stops an automobile based on probable cause or reasonable suspicion that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996); *State v. Randolph*, 74 S.W.3d 330, 334 (Tenn. 2002); *Vineyard*, 958 S.W.2d at 734. If the officer has probable cause to believe that a traffic violation has occurred, any seizure will be upheld even if the stop is a pretext for the officer's subjective motivations in making the stop. *See Whren*, 517 U.S. at 813-15; *State v. Vineyard*, 958 S.W.2d 730, 734-35 (Tenn. 1997). Another such exception occurs when a law enforcement officer initiates an investigatory stop based upon specific and articulable facts that the defendant has either committed a criminal offense or is about to commit a criminal offense. *Terry v. Ohio*, 392 U.S. 1, 20-21(1968); *Binette*, 33 S.W.3d at 218. This narrow exception has been extended to the investigatory stop of vehicles. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975); *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). In evaluating whether the law enforcement officer had reasonable suspicion to justify an investigatory stop, this Court must consider the totality of the circumstances, which includes the personal observations and rational inferences and deductions of the trained law enforcement officer making the stop. *See Terry*, 392 U.S. at 21; *Binette*, 33 S.W.3d at 218; *Watkins*, 827 S.W.2d at 294. Objective standards apply, rather than the subjective beliefs of the officer making the stop. *State v. Day*, 263 S.W.3d 891, 903 (Tenn. 2008); *State v. Norword*, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996). "An officer making an investigatory stop must be able to articulate something more than an 'inchoate and unparticularized suspicion or 'hunch.'" *Day*, 263 S.W.3d at 902 (quoting *Terry*, 392 U.S. at 27). This includes, but is not limited to, objective observations, information obtained from

other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. *Id.*; *Watkins*, 827 S.W.2d at 294 (citing *United States v. Cortez*, 449 U.S. 411, 418 (1981)). A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him. *Terry*, 392 U.S. at 21.

In the case herein, it is clear that Appellant was "seized" within the meaning of the state and federal Constitutions. Officer Stiles testified that he initiated a traffic stop of Appellant's vehicle. Thus, in order for the stop to be constitutionally valid, Officer Stiles must have at least had a reasonable suspicion, supported by articulable facts, that Appellant had committed, or was about to commit an offense.

As stated previously, Appellant relies upon *Freeman*, *Binette*, *Smith*, *Ann Elizabeth Martin*, *John Crawley, Sr.*, and *Frank Edward Davidson*, to support his argument that his actions did not give rise to reasonable suspicion for a traffic stop.

We determine that these cases are distinguishable from the facts presented to the trial court herein. In *Freeman*, the defendant was driving a motor home around a curve on a windy day when the vehicle crossed into the emergency lane of a four-lane interstate one time for a distance of approximately twenty to thirty feet. 209 F.3d at 466-68. The court determined that there was no probable cause to support the stop because "one isolated incident of a large motor home partially weaving into the emergency lane for a few feet and an instant in time [does not] constitute[ ] a failure to keep the vehicle within a single lane 'as nearly as practicable.'" *Id.* (*quoting United States v. Gregory*, 79 F.3d 973, 978 (10th Cir. 1996)). Likewise, in *Smith* and *Ann Elizabeth Martin*, this Court determined that there was no reasonable articulable suspicion for stopping the defendants' vehicles where the defendants crossed over the white line one time on a four-lane highway while changing lanes. *Smith*, 21 S.W.3d at 257-58l; *Ann Elizabeth Martin*, 2000 WL 1273889, at *6-7.

In *John Crawley, Sr.*, the defendant was stopped by police after he drifted to the left side of the road twice after stopping in the middle of an intersection after a yield sign. 2004 WL 112867, at *1. This Court determined that there was no reasonable suspicion to stop the defendant when the defendant was driving on a residential street with no lines. The video showed the defendant moving to the left side of the road to avoid a parked car. *Id.* Further, the defendant himself testified that he stopped in the middle of the intersection because he was not familiar with the area. *Id.*

*Frank Edward Davidson* also concerns the investigatory stop of a motorist and a recording of the defendant's driving immediately prior to the stop. 2008 WL 8429683, at *1. In *Frank Edward Davidson*, the defendant was stopped by an officer after a witness called

the police to report that a possibly intoxicated individual had gotten into a maroon or red car. *Id.* The defendant failed to signal when changing lanes and crossed the center line four times. *Id.* The officer stopped the driver and arrested the defendant for DUI. The defendant subsequently filed a motion to suppress. *Id.* At the hearing, the officer testified, and the trial court viewed the video recording. The trial court granted the motion to suppress stating in its findings that it did not appear that the defendant crossed the yellow line. *Id.* at *2. On appeal, this Court held that the trial court's decision should be reversed. *Id.* at *5. This Court stated that after viewing the videotape it found that the defendant did actually veer over the yellow line. This evidence in conjunction with the officer's testimony and the information reported to the police dispatcher were enough to find reasonable suspicion to support the stop. *Id.* at *5.

Finally, in *Binette*, our supreme court reversed a trial court's determination that an officer had reasonable suspicion to stop the defendant because the videotape of the encounter only showed the defendant making lateral movements within his own lane of travel. At the hearing held in the trial court on the motion to suppress, the officer did not testify, and the videotape made immediately before the stop was the only evidence introduced. 33 S.W.3d at 219. The court commented that the "number of times that a vehicle touches the center line or drifts within a lane is not dispositive of the issue before this Court. Rather, . . . a court must consider the totality of the circumstances in determining whether reasonable suspicion was present at the time a stop was initiated." *Id.*

In *Binette*, along with *John Crawley Sr.*, *Smith*, *Ann Elizabeth Martin*, and *Frank Edward Davidson*, there was a videotape of the defendants' driving.[4] In the case herein, there was no video recording of Appellant's driving. Therefore, the officer's testimony, accredited by the trial court, is the basis by which we discern whether there was reasonable suspicion for the stop. In that regard, the testimony presented by Officer Stiles was that he personally saw within one half mile Appellant cross the fog line on two occasions in addition to crossing the yellow center line once. The officer mentioned that Appellant was seen pulling his car onto the highway from a bar. This Court has previously held that an officer's observation of a defendant's crossing over the center line in addition to weaving within his own lane is sufficient reasonable suspicion to support an investigatory stop and cause the denial of a motion to suppress. *Tennessee v. William Robert Wilson*, No. M2009-01146-CCA-R3-CD, 2010 WL 2966747, at *6-8 (Tenn. Crim. App., at Nashville, Jul. 26, 2010), *perm. app. denied* (Tenn. Nov. 17, 2010); *State v. Jody Glen Loy*, No. E2006-02206-CCA-R3-CD, 2008 WL 2229259, at *5 (Tenn. Crim. App., at Knoxville, May 30, 2008). In this case, Appellant crossed the yellow line once and the fog line twice, certainly more than weaving within his own lane of traffic. Moreover, even if Appellant only

---

[4]It is not clear in *Freeman* if there was a videotape of the defendant's driving.

crossed the double yellow lines one time, without reasonable cause, that evidence in and of itself would equate to probable cause to initiate a traffic stop under Tennessee Code Annotated sections 55-8-121 or 55-8-123.

We conclude that the testimony of Officer Stiles demonstrates that there was reasonable articulable suspicion to justify a traffic stop. There is no basis upon which to reverse the trial court's denial of Appellant's motion. In other words, the evidence does not preponderate against the findings of the trial court.

Therefore, this issue is without merit.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE